# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENNY DECARLO GALLEGOS, | Case No. 1:23-cv-00090-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DIRECTING CLERK OF THE COURT TO ENTER |
| v. | JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY |
| COMMISSIONER OF SOCIAL SECURITY, | AND AGAINST PLAINTIFF BENNY DECARLO GALLEGOS AND TO CLOSE THIS ACTION |
| Defendant. | |
| | (ECF Nos. 13, 15, 17, 18) |

## I.

## INTRODUCTION

Benny DeCarlo Gallegos ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]   For the reasons explained herein, Plaintiff's Social Security appeal shall be denied.

/ / /

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (See ECF Nos. 9, 10, 11.)

**II.**

**BACKGROUND**

**A.  Procedural History**

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income on August 21, 2019.  (AR 30, 79.)  Plaintiff's claims were initially denied on January 30, 2020, and denied upon reconsideration on May 26, 2020.  (AR 137-41, 145-50.) Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ").  (AR 151-52.)  Plaintiff appeared for a telephonic hearing on May 28, 2021.  (AR 49-78.)  Plaintiff confirmed he wished to proceed without representation by legal counsel.  (AR 56-57.)   On November 29, 2021, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 30-44.) On December 1, 2022, the Appeals Council denied Plaintiff's request for review.  (AR 1-4.)

On January 23, 2023, Plaintiff filed the complaint in this action.  (ECF No. 1 at 3.)  On March 24, 2023, Defendant filed the administrative record.  (ECF No. 11.)  On May 9, 2023, Plaintiff filed what the Court construes as the opening brief in support of summary judgment. (Pl.'s Opening Br. ("Mot."), ECF No. 13.)[2]  On June 16, 2023, Defendant filed an opposition brief.  (Def.'s Opp'n ("Opp'n"), ECF No. 17.)  On July 10, 2023, Plaintiff filed a reply brief. (Pl.'s Reply Br. ("Reply"), ECF No. 18.)

**B.  The ALJ's Findings of Fact and Conclusions of Law**

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, November 29, 2021:

- The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

---

[2]  The deadline to filed Plaintiff's opening brief was May 8, 2023.  On May 9, 2023, the Court noted Plaintiff had not filed his motion for summary judgment or other filing by the deadline, and issued an order to show cause why sanctions should not issue for failure to file the motion for summary judgment in compliance with the Court's scheduling order (ECF No. 5).  (ECF No. 12.)  On May 10, 2023, Plaintiff's motion for summary judgment was entered on the docket as filed on May 9, 2023. (See ECF No. 13.) Having noted Plaintiff's motion was filed on the same day the Court issued its order to show cause, the Court discharged the order and sua sponte granted Plaintiff a one-day *nunc pro tunc* extension to file his brief.  (ECF No. 14.)  On May 25, 2023, Plaintiff re-submitted his opening brief; however, he added handwritten page numbers and a title stating, "Motion for Summary Judgment," re-arranged exhibits, and added nearly 30 pages of largely duplicative exhibits.  (ECF No. 15 ("Supp. Mot.").)  All references to Plaintiff's arguments will be to the opening brief (ECF No. 13) filed on May 9, 2024.

- The claimant has not engaged in substantial gainful activity since March 3, 2019, the alleged onset date.

- The claimant has the following severe impairments: deformity of the right femur with incomplete atypical fracture. Osteoarthritis of the right hip, unequal limb length of the right femur, subchondral bone cyst, and obstructive lung disease.

- The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

- After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could occasionally climb ladders, ropes, and scaffolds; could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; could have frequent exposure to fumes, odors, dust, gases, pulmonary irritants, and hazards such as unprotected heights and moving machinery.

- The claimant is unable to perform any past relevant work.

- The claimant was born on September 12, 1984 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

- The claimant has at least a high school education.

- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

- Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

- The claimant has not been under a disability, as defined in the Social Security Act, from March 3, 2019, through the date of this decision.

(AR 33-44.)

///

1

### III.

2

### LEGAL STANDARD

3

**A.     The Disability Standard**

4    To qualify for disability insurance benefits under the Social Security Act, a claimant must

5    show he is unable "to engage in any substantial gainful activity by reason of any medically

6    determinable physical or mental impairment[3] which can be expected to result in death or which

7    has lasted or can be expected to last for a continuous period of not less than 12 months."  42

8    U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation

9    process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[4] Batson v.

10   Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).   The five steps in the

11   sequential evaluation in assessing whether the claimant is disabled are:

12
13
> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

14
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

15
16
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

17
18
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

19
20
21
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

22   Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

23   on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A

24   claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of

25   [3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities

26   that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).
     [4] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations

27   which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits.
     Accordingly, while Plaintiff seeks only disability insurance benefits in this case, to the extent cases cited herein may

28   reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant
     matter.

1  proof from step one through step four.

2  Before making the step four determination, the ALJ first must determine the claimant's

3  RFC. 20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL

4  1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite his

5  limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§

6  404.1545(a)(1); 416.945(a)(1). The RFC must consider all of the claimant's impairments,

7  including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security

8  Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[5] A determination of RFC is

9  not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See

10  20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as

11  responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's

12  physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049

13  (9th Cir. 2001).

14  At step five, the burden shifts to the Commissioner, who must then show that there are a

15  significant number of jobs in the national economy that the claimant can perform given his RFC,

16  age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d

17  1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational

18  Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpt. P, App. 2;

19  Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).

20  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility,

21  resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at

22  1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

23      **B.    Standard of Review**

24  Congress has provided that an individual may obtain judicial review of any final decision

25  of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In

26

27  [5] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

28

determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard."  Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout, 454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

1

### IV.

2

### SUMMARY OF PLAINTIFF'S ALLEGATIONS AND ARGUMENTS

3      Plaintiff proceeds in this action *pro se*.  The Court shall first summarize the Plaintiff's

4  opening brief and the exhibits attached thereto.  The Court will then summarize the relevant

5  information from the administrative proceedings below.

6      **A.      Plaintiff's Opening Brief and Supplemental Opening Brief**

7      Plaintiff's briefing states that his condition and symptoms began following an incident on

8  September 4, 2018 while working in the kitchen of a Buffalo Wild Wings.  (Mot. 3.)[6]  Plaintiff

9  alleges he worked with no ventilation, water, or fans from 10 a.m. to 6 p.m. in a kitchen full of

10  smoke.  (Id. at 2.)  Plaintiff informed his managers that he was not feeling well but no action was

11  taken.  (Id.)  Not wanting to jeopardize his employment, Plaintiff continued to work.  (Id.)

12  During his shift, Plaintiff states he felt dizzy, nauseous, and weak; he experienced shortness of

13  breath and burning eyes; and his muscle joints, body, and bones began to hurt.  (Id.)  Plaintiff

14  saw a doctor in Tijuana when he "got scared" that he "inhaled toxic fumes for 8 hours."  (Id.)

15  The doctor prescribed "medications, a pulmonary test, a lot of rest and to stay hydrated."  (Id.)

16  Plaintiff alleges his employer "made [him] work" the following day despite feeling ill and

17  showing the doctor note.  (Id.)  Plaintiff reported the September 4, 2018 incident to Buffalo Wild

18  Wings corporate office, "OSHA," and "ECO LAB."  (Id. at 3.)

19      Plaintiff asserts Buffalo Wild Wings called Plaintiff in late September for three scheduled

20  doctor appointments at Health Works Medical Group.  (Id.)  Plaintiff reports that he showed his

21  managers the paperwork but they neither complied nor made modified work available to him.

22  (Id.)  Plaintiff then alleges work-related complaints during his eight-year tenure at Buffalo Wild

23  Wings.  (Id.)  Plaintiff states he was "termination for no reason on March 3, 2019."  (Id.)

24  Plaintiff states his conditions have not improved and have gotten worse, which has had a

25  negative impact on his health physically, mentally, and emotionally.  (Id.)

26      On March 12, 2020, Plaintiff was "beat up by 4 border patrol officers" who "were aware

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28  [6] All references to pagination of party briefing pertains to those as indicated on the upper right corners via the
    CM/ECF electronic court docketing system.

of [his] conditions." (Id. at 4.)  Plaintiff was seen in an emergency room on March 13, 2020 and "was told [his] right leg suffered a fracture, [his] right knee was in a severe condition due to the impact to the floor, and [his] back should be seen by a specialist."  (Id.)

On March 24, 2020, Plaintiff was seen in an emergency room following a motor vehicle collision.  (Id.)  Plaintiff contends his conditions and symptoms got worse.  (Id.)

Plaintiff states he was referred to physical therapy from his doctor from Pain Clinics of California on April 12, 2023.  (Id.)  Plaintiff describes a painful physical therapy session he experienced on an unknown date prior to April 17, 2023. (Id. at 4-5.)  At that appointment, the physical therapist mentioned Plaintiff's back problem was "due to heavy lifting or impact."  (Id. at 5.)  Plaintiff was scheduled for another physical therapy visit on April 17, 2023; however, he contends he had to reschedule because he was still feeling pain from his first visit.  (Id.)

Plaintiff avers he is "still going to physical therapy and getting psychiatric therapy due to [his] depression."  (Id. at 4.)  Plaintiff states he has been diagnosed with post-traumatic stress disorder and scoliosis.  (Id.)  Plaintiff states he is also going to Adventist Health "to be seen by professionals, taken [sic] pulmonary tests."  (Id.)  Plaintiff states he has a caregiver because his "conditions have limited to do activities [sic], care for [his] hygiene, and comfort [him] in [his] moments of anxiety, panic attacks, anger, and depression."  (Id.)

Plaintiff attaches sixty-one pages of documents to his opening brief, which the Court summarizes below.

- Prescription summary dated September 4, 2018 from Calle Abraham Gonzalez located in Tijuana, Mexico.  (Mot. 6-7.)
- Medical records from Health Works Medical Group dated September 20, 2018, September 25, 2018, and September 26, 2018.  (Mot. 8-16.)
- Correspondence dated January 10, 2029 from Cal-OSHA notifying Plaintiff his complaint regarding Buffalo Wild Wings' hazardous conditions has been either "identified and corrected and/or determined not to exist."  (Mot. 17-18.)
- 2019 employment records from Buffalo Wild Wings.  (Mot. 19.)
- Correspondence dated April 20, 2020 from the section chief of the U.S. Customs and

Border Protection addressing Plaintiff's complaint regarding his encounter with border patrol agents on March 12, 2020. (Mot. 20.)

- March 13, 2020 Kaweah Delta Medical Center emergency department discharge instructions noting "victim of assault, knee pain, back pain." (Mot. 21.)

- Synchrony of Visalia "appointment list" for Plaintiff listing nine appointments between October 19, 2020 and September 29, 2021. (Mot. 22-24.)

- Kaweah Delta Health Care Clinic April 29, 2020 appointment reminder (Mot. 25.)

- A handout describing "major joint injections." (Mot. 26-27.)

- Kaweah Health Therapy Specialists appointment list for Plaintiff listing forty-three appointments between November 1, 2019 and August 23, 2022. (Mot. 28-29.)

- Adventist Health visit summary dated June 9, 2022 listing diagnoses of BMI, chronic pain of right hip and right knee, and pain in right femur. The summary notes orders for imaging of Plaintiff's knee, pelvis, right hip, and femur. (Mot. 30-36.)

- Adventist Health visit summary dated July 21, 2022 listing health issues as BMI and pain in femur. (Mot. 37-40.)

- Adventist Health visit summary dated January 19, 2023 listing diagnoses for BMI, chronic thoracic back pain, and pain in right femur stating, "no further orthopedic care is planned at this time…patient may return as needed." (Mot. 41-46.)

- Miscellaneous appointment sheets for Plaintiff and an unknown individual dated June 30, 2022. (Mot. 47-48.)

- November 16, 2022 correspondence from Kaweah Health Imaging to Plaintiff stating the office has been trying to contact him to schedule an appointment. (Mot. 49.)

- Kaweah Health Urgent Care discharge instructions and lumbosacral spine x-ray dated March 24, 2022. (Mot. 50-61.)

- Delivery ticket for a walker and seat attachment dated May 19, 2022. (Mot. 62.)

- Miscellaneous medical summary dated September 7, 2022. (Mot. 63.)

- Referral sheet from Visalia Pain Clinics of Central California for PhysMed Physical Therapy-Corcoran dated February 22, 2023 (Mot. 64-65.)

- List of upcoming appointments from April 2023 to May 2023 from PhysMed Physical Therapy-Corcoran. (Mot. 66.)

Plaintiff attached the following additional documentation to his supplemental opening brief (ECF No. 15), which the Court considers, despite his failure to include it in his opening brief, due to Plaintiff's *pro se* status and the Defendant's lack of objection:

- Discharge instructions from Kaweah Health Emergency Department dated March 29, 2022 listing diagnoses for "motor vehicle accident; neck pain; pelvic pain; wrist pain." (Supp. Mot. at 74-83.)
- March 25, 2022 note from Sequoia Health & Wellness Centers. (Supp. Mot. at 84.)
- Patient appointment list for four appointments from February 21, 2023 to June 1, 2023 with unspecified provider Samantha Kennedy. (Supp. Mot. at 88-89.)

**B.    Plaintiff's Arguments and Reply Brief**

Plaintiff's opening brief states that upon receiving a copy of the administrative record from Defendant, he is "replying and informing that [he] found a couple errors in [his] medical history." (Mot. 2.) Plaintiff states he noticed his medical history was missing dates and information that was not noted. (Id.) Accordingly, Plaintiff "took the time to gather that information and send [the Court] more evidence that shows [he is] in the worse [*sic*] condition right now than [he] was." (Id.)

Defendant's opposition argues in part that "Plaintiff's brief in support of his Motion for Summary Judgment does not raise any specific points of error in the ALJ's findings, but argues that the 'medical history was missing dates, and information that wasn't noted.' " (Opp'n 8.)

In response, Plaintiff argues Defendant's contention "is a misunderstanding because all the evidence provided from me are specific points of error by the ALJ's decision. Yo [*sic*] can find the missing evidence in my Motion for Summary Judgment Pages 1-90. These documents were submitted to both Appeals Council and Court." (Reply 3.) Plaintiff also responded to various arguments made by Defendant's review of the administrative record. (Id. 2-3.) Plaintiff re-attached particular medical and administrative records from his opening brief to his Reply. (Reply 5-17.) Plaintiff also attached four new documents containing a stamp stating "privileged

and confidential attorney-client communication: attorney work product" from Law Offices of Payman Zargari, which Plaintiff purports are related to his worker's compensation case regarding the September 4, 2018 incident at Buffalo Wild Wings.  (Reply 4, 18-21.)

### C.      Plaintiff's Relevant Testimony at the Hearing Before the ALJ

On May 28, 2021, Plaintiff provided testimony before the ALJ during a telephonic hearing.  (AR 49-78.)  Relevant to the limited issues on appeal, the ALJ began the hearing by asking Plaintiff if he reviewed the file containing medical records that included records into April 2020, which Plaintiff confirmed.  (AR 52.)  The ALJ then confirmed Plaintiff had seen Dr. Daniel Proctor, Sequoia Health and Wellness Center, Kaweah Delta Exeter Health, and Family Healthcare Network in the last year and requested Plaintiff's permission to obtain the records from each of those providers, which Plaintiff confirmed.  (AR 53.)  The ALJ then asked Plaintiff whether there were "any other doctors that [she] need[ed] to get records from," in which Plaintiff responded "no."  (Id.)  Plaintiff then asked the ALJ if she had "the records of the emergency visit [Plaintiff] had on the 13th of March in 2020."  (Id.)  The ALJ asked whether Plaintiff had those records and Plaintiff answered in the affirmative, stating "I have my medical records. I have the CD. I have everything I have from the beginning of  my medication to this date."  (Id. at 53.) The ALJ asked Plaintiff if he wanted to send his record file and Plaintiff stated he did and would "send everything."  (Id.)  Plaintiff confirmed the correct address to send his records to, and the ALJ informed Plaintiff she would request the records from the listed providers.  (Id. at 55.)

At the conclusion of the hearing, the ALJ informed the Plaintiff she would begin requesting records.  (AR 77.)  The transcript ends with a question by Plaintiff asking the ALJ whether he should send the original records or a copy of all the records.  (AR 78.)

### D.      The ALJ's Findings

The ALJ issued her findings on November 29, 2022, six months following the hearing. (AR 30-48.)  At the first step, the Court found Plaintiff has not engaged in substantial gainful activity since March 3, 2019, the alleged onset date.  (AR 33.)

At step two, the ALJ determined that Plaintiff had the following severe impairments: deformity of the right femur with incomplete atypical fracture, osteoarthritis of the right hip,

unequal limb length of the right femur, subchondral bone cyst, and obstructive lung disease. (AR 33-35.)  The ALJ found a vitamin D deficiency and depression were non-severe.  (Id.)  The ALJ also found fibromyalgia was non-medically determinable because there is no objective medical evidence or diagnostic testing to support the alleged impairment.  (AR 35.)

At step three, the ALJ concluded that Plaintiff's impairments did not meet or equal any of the disabling impairments listed in the regulations.  (AR 35.)  The ALJ then considered Plaintiff's residual functional capacity ("RFC") and concluded that Plaintiff was capable of performing light work except the claimant could occasionally climb ladders, ropes, and scaffolds; could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; could have frequent exposure to fumes, odors, dust, gases, pulmonary irritants, and hazards such as unprotected heights and moving machinery  (AR 36.) The ALJ determined the RFC assessment "is supported by the diagnostic imaging, treatment records, and the physical examinations….the medical findings do not support the existence of limitations greater than the above listed [RFC]."  (AR 41.)

The ALJ determined that while Plaintiff was unable to perform any past relevant work (step four), he was capable of performing other work existing in significant numbers in the national economy, including the representative jobs of marker, assembler, and produce weigher (step five).  (AR 42-43.)  As a result, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 43.)

**E.      The Decision by the Appeals Council**

Plaintiff requested review of the ALJ's decision.  (AR 1.)  In letters dated February 8, 2022 and April 19, 2022, the Appeals Council granted Plaintiff's requests for additional time to submit a statement about the facts and the law or additional evidence, provided the evidence was new, material, and related to the period on or before the date of the hearing decision; that there was a reasonable probability that the additional evidence would change the outcome of the decision; and that Plaintiff could show good cause for failing to submit the evidence earlier. (AR 14-15, 13-14.)

The record also reflects Plaintiff attempted to submit CDs of diagnostic images in

connection with his request for review, but they were returned by the Appeals Council.  In letters dated March 1, 2022 and June 8, 2022, the Appeals Council advised Plaintiff that it does not interpret diagnostic images but would accept as evidence a report detailing and interpreting the diagnostic images.  (AR 7-8; 11-12.)  In each letter, the Appeals Council informed Plaintiff it would not act for 25 days to allow Plaintiff to send additional information.  It also notified Plaintiff that if it did not hear from him within 25 days, it would assume he did not want to send more information and it would then proceed based on the record.  (Id.)

On September 23, 2022, Plaintiff submitted a letter from Kaweah Delta dated February 10, 2020 noting Plaintiff's unspecified provider has referred him for therapy sessions, but that Kaweah Delta did not have resources to schedule Plaintiff.  (AR 2, 24.)  Plaintiff also submitted a June 29, 2020 prescription from Kaweah Delta for a "3cm full length lift right shoe." (AR 2, 25.)  Plaintiff also submitted a May 4, 2021 prescription from Hangar Clinic for an orthopedic shoe lift insert. (AR 2, 26.)  When denying his request for review, the Appeals Council informed Plaintiff that it found the three records "d[o] not show a reasonable probability that it would change the outcome of the decision," and therefore did not exhibit the evidence. (AR 2.)

Plaintiff also submitted an application for Disabled Person Placard or Plates, dated March 9, 2022 through April 21, 2022 (AR 16-17); In-Home Supportive Services, dated April 8, 2022 through April 22, 2022 (19-20); and a Health and Wellness Centers medical report dated September 1, 2022 (AR 23).  The Appeals Council advised Plaintiff that the ALJ considered his case through November 29, 2021 and the additional evidence did not relate to the period at issue and therefore did not affect whether Plaintiff was disabled beginning on or before November 29, 2021.[7]  (AR 2.)

In denying his request for review, the Appeals Council advised Plaintiff that if Plaintiff wanted the Agency to consider whether he was disabled after November 29, 2021, he needed to file a new claim for disability insurance benefits. (Id.)

---

[7] Contrary to Plaintiff's argument that the "missing evidence in [his] Motion for Summary Judgment Pages 1-90" was "submitted to both Appeals Council and Court," the Court notes none of the documents attached to Plaintiff's briefing is listed by the Appeals Council in its summary of additional evidence, nor are any of the documents included in the administrative record.  (Reply 3.)

**V.**

**DISCUSSION AND ANALYSIS**

Plaintiff makes no challenge that the ALJ specifically erred in the five-step sequential evaluation in making her disability determination.  In fact, Plaintiff never addresses the ALJ's findings or determinations in either his opening brief or supplemental opening brief. Instead, Plaintiff only addresses "missing dates[] and information that wasn't noted" in the administrative record.  (Mot. 1.)  Defendant argues that Plaintiff "does not raise any specific points of error in the ALJ's findings." (Opp'n 8.)  In response, Plaintiff argues Defendant's statement "is a misunderstanding because all the evidence provided from me are specific points of error by the ALJ's decision."  (Reply 3.)  The remainder of Plaintiff's briefing is a narrative of the incidents which he contends underly his conditions and symptoms, descriptions of those symptoms and conditions, and the impact his symptoms and conditions have on his daily life.

Apart from the statement in his reply, Plaintiff does not present any concrete argument as to how the ALJ erred.  While the Court has an obligation to a *pro se* plaintiff "to construe the pleadings liberally and to afford [him] the benefit of any doubt," the Court cannot manufacture arguments for a plaintiff.  Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985); see also Haines v. Kerner, 404 U.S. 519, 520–21 (1972).  Accordingly, the Court finds Plaintiff has waived any argument regarding the ALJ's specific findings of fact and conclusion of law.  See Moore v. Comm'r of Soc. Sec., No. 2:16-CV-00875-KJN, 2017 WL 3453200, at *4 (E.D. Cal. Aug. 11, 2017) ("[P]laintiff fails to argue this issue with any specificity, beyond his conclusory assertion [and] [p]reliminarily, the court need not address issues that are not fully briefed." (citing Carmickle, 533 F.3d at 1161)); Groom v. Berryhill, No. EDCV 17-1117 JC, 2018 WL 1517165, at *6 (C.D. Cal. Mar. 27, 2018) ("Plaintiff's Motion again provides no specific argument regarding how the ALJ specifically erred in such respect, and thus fails to persuade the Court that a remand is warranted here."); Patricia Z. v. Comm'r of Soc. Sec., No. 2:18-CV-930 TLF, 2019 WL 1615235, at *5 (W.D. Wash. Apr. 16, 2019) (However, 'a bare assertion of an issue does not preserve a claim[,]' [and] [a]lthough plaintiff recites evidence, she offers no cogent reasons (apart from the argument discussed above) to explain why or how the evidence

1    justifies reversal of the ALJ's decision." (quoting <u>D.A.R.E. America v. Rolling Stone Magazine</u>,

2    270 F.3d 793, 793 (9th Cir. 2001))); <u>Garcia v. Comm'r of Soc. Sec. Admin.</u>, No. CV-21-00191-

3    PHX-JJT, 2022 WL 14813733, at *3 (D. Ariz. Oct. 26, 2022) ("Plaintiff fails to argue with any

4    specificity as to which particular ailments Plaintiff believes the ALJ did not correctly consider

5    when discounting the symptom testimony.").

6          Courts generally "review only issues which are argued specifically and distinctly in a

7    party's opening brief." <u>Indep. Towers of Washington v. Washington</u>, 350 F.3d 925, 929 (9th Cir.

8    2003).  However, given Plaintiff's *pro se* status and what this Court construes as a clarification

9    of his "specific points of error by the ALJ's decision," the Court finds Plaintiff's motion requests

10   that the case be remanded for the ALJ's consideration of the new evidence and failure to fully

11   develop the record.

12         **A.    Plaintiff's New Evidence Does Not Warrant Remand**

13         Plaintiff's motion for summary judgment states:

14                 I received the package of medical history from Phillip A. Talbert
15                 United States Attorney and Assistant Unite States Attorney
                   Benjamin E. Hall. I'm reply and informing that I found a couple
16                 errors in the my [*sic*] medical history. I noticed that my medical
                   history was missing dates, and information that wasn't noted. I
17                 took the time to gather that information and send you more
                   evidence that shows that I'm in the worse condition right now than
18                 I was.

19   (Mot. 1.)  The Court construes Plaintiff's reference to the "package of medical history" to be

20   referencing the administrative record in the instant action (ECF No. 11).  As previously detailed,

21   Plaintiff attached sixty-one pages to his opening brief (Mot. 6-66); eighty-five pages to his

22   supplemental opening brief (ECF No. 15 at 7-91); and sixteen pages to his reply brief (Reply 5-

23   21).  Plaintiff states he "hope[s] [his] file, paperwork, and evidence is not overseen and taken

24   into consideration."  (Mot. 1.)  In his reply brief, Plaintiff asks this Court to "review [his] case

25   and take [his] evidence into consideration."  (Reply 4.)  In light of Plaintiff's *pro se* status, the

26   Court liberally construes Plaintiff's attachment of documentation, which Plaintiff clarifies are

27   "specific points of error by the ALJ's decision," as a request that the case be remanded for the

28   ALJ's consideration of the new evidence pursuant to 42 U.S.C. 405(g).

1    Defendant argues remand is not warranted based on any of the documents submitted by

2    Plaintiff because the documents are generally insignificant to the ALJ's findings and much of it

3    is dated outside the relevant time period.  (Opp'n 14.)  For the reasons set forth below, the Court

4    agrees that remand is not warranted.

5         1.    Legal Standard

6         Pursuant to 42 U.S.C. 405(g), the Court "may at any time order additional evidence to be

7    taken before the Commissioner of Social Security, but only upon a showing that there is new

8    evidence which is material and that there is good cause for the failure to incorporate such

9    evidence into the record in a prior proceeding."  To be "material" under section 405(g), "the new

10   evidence must bear 'directly and substantially on the matter in dispute,' " and Plaintiff "must

11   additionally demonstrate that there is a 'reasonable probability' that the new evidence would

12   have changed the outcome of the administrative hearing."  Mayes v. Massanari, 276 F.3d 453,

13   462 (9th Cir. 2001) (quoting Ward v. Schweiker, 686 F.2d 762, 764 (9th Cir. 1982); Booz v.

14   Secretary of Health & Human Servs., 734 F.2d 1378, 1380 (9th Cir. 1983)).

15        "To demonstrate good cause, the claimant must demonstrate that the new evidence was

16   unavailable earlier."  Id. at 463; see also Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985)

17   ("If new information surfaces after the Secretary's final decision and the claimant could not have

18   obtained that evidence at the time of the administrative proceeding, the good cause requirement

19   is satisfied"); Sanchez v. Sec'y of Health & Hum. Servs., 812 F.2d 509, 512 (9th Cir. 1987)

20   (finding the plaintiff lacked good cause to remand for consideration of two psychological

21   examinations prepared after his disability determination when his attorney knew of his memory

22   loss but failed to explain why he had not requested a mental evaluation or pressed his mental

23   impairment claim at the hearing before the ALJ).  Moreover, the new evidence must relate to the

24   relevant time period to be material. Sanchez, 812 F.2d at 511–12.

25        2.    Analysis

26        The Court has reviewed the documents attached to Plaintiff's briefing and the

27   administrative record in its entirety.  There is no indication in the administrative record that any

28   of the documents attached to Plaintiff's briefing were ever submitted to the ALJ or the Appeals

1   Council as part of Plaintiff's request for review.  Because Plaintiff is asking the Court to review

2   new evidence that was not submitted during the administrative proceedings, section 405(g)

3   applies, and Plaintiff must show the new evidence is material and there was good cause for

4   failure to incorporate the evidence into the record below.  <u>Booz</u>, 734 F.2d at 1380.  However,

5   other than arguing "all the evidence provided from me are specific points of error by the ALJ's

6   decision," Plaintiff makes no other arguments relating to the documentation.

7       The Court divides Plaintiff's proffered new evidence into three categories based on the

8   date of the record.  First, the following records pre-date Plaintiff's alleged disability onset date of

9   March 3, 2019:  a September 4, 2018 prescription summary from a medical visit in Tijuana (Mot.

10  6-7); September 2018 and October 2018 evidence related to Plaintiff's application for worker's

11  compensation benefits and lawsuit (Mot. 8-16, Reply 18-21); and January 2019 evidence related

12  to a complaint filed with CAL-OSHA (Mot. 17-19).  Second, documents dated within the

13  relevant time period between March 3, 2019, the date of Plaintiff's alleged disability onset date,

14  to November 29, 2021, the date of the ALJ's decision, include: evidence related to a complaint

15  filed against U.S. Customs and Border Protection (Mot. 20); a March 13, 2020 emergency room

16  discharge summary (Mot. 21); appointment reminders and lists of Plaintiff's appointments prior

17  to November 29, 2021 (Mot. 22-25, 28-29); and an undated general handout describing major

18  joint injections (Mot. 26-27).

19      Although these documents pre-date the ALJ's findings, Plaintiff proffers no argument

20  that good cause exists for the absence of the evidence from the administrative record.  Moreover,

21  even if Plaintiff had presented good cause, the Court finds no reasonable possibility that the

22  records would have changed the outcome of the ALJ's determination had it been presented to

23  her.  The Tijuana prescription summary does not demonstrate any significant new functional

24  limitations that may have led the ALJ to find Plaintiff disabled.  (Mot. 6.)  Further, Plaintiff

25  testified in detail about his conditions and symptoms that resulted from the Buffalo Wild Wings

26  and U.S. Border Patrol incidents at the hearing before the ALJ.  (AR 60-62.)  The Court further

27  finds the proffered documents supporting the incidents and Plaintiff's complaints thereafter do

28  not "bear 'directly and substantially on the matter in dispute.' " <u>Mayes</u>, 276 F.3d at 462.  The

1   Court also finds the medical records contained within Plaintiff's worker's compensation

2   evidence do not demonstrate any significant new functional limitations that may have led the

3   ALJ to find him disabled.  (Mot. 14-16.)   To the contrary, the records initially reflect an

4   "expected maximum medical improvement date 10-11-2018" (Mot. 15), but that Plaintiff was

5   then "advised to return to work without restrictions" on September 26, 2018 (Mot. 16).   As

6   discussed more fully below, the March 13, 2020 discharge instruction provides no objective

7   medical evidence, but the three listed diagnoses—notably knee and back pain—appear consistent

8   with the longitudinal record before the ALJ.  The Court finds there is no reasonable probability

9   that the remaining general informational sheets about injections, appointment reminders, and

10   lists of appointment dates—which provide no substantive information or objective medical

11   evidence—would have specifically changed the outcome of the ALJ's determination.  The Court

12   therefore finds the new evidence within the relevant time period does not undermine the ALJ's

13   reasons for finding Plaintiff's testimony to be non-credible, nor does it show any additional

14   functional limitations that might have led the ALJ to find him disabled.  Accordingly, the Court

15   denies Plaintiff's request to remand the case to the ALJ to consider the specified documents.

16        The remainder of the documentation attached to Plaintiff's briefing occurred after

17   November 29, 2021 and therefore does not relate to the relevant time period under review before

18   the Court.  Documents dated outside the relevant time period include: correspondence from

19   providers and lists of Plaintiff's appointments (Mot. 28, 30-49, 64-66; Supp Mot. 88-89, 84);

20   March 24, 2022 urgent care discharge instructions and interpretation of a lumbrosacral spine x-

21   ray (Mot. 50-61); March 29, 2022 emergency room discharge instructions following a motor

22   vehicle collision (Supp. Mot. 74-83); a May 2022 delivery ticket for a walker (Mot. 62); and

23   September 7, 2022 partial post-appointment instructions (Mot. 63).  The Court notes that some of

24   the documents even post-date Plaintiff's January 20, 2023 complaint filed in this action. (See,

25   e.g., Mot. 41-46, 64-66; Supp. Mot. 88-89.)

26        The Court finds the new evidence submitted by Plaintiff dated after the relevant time

27   period is not material because it does not "bear 'directly and substantially' " on the time period

28   considered in the ALJ's decision and is not probative of his impairments as they existed at or

before the time the ALJ issued her decision. <u>Mayes</u>, 276 F.3d at 462; <u>see</u>, <u>e.g.</u>, <u>Garcia v. Kijakazi</u>, No. 1:22-CV-00632-SKO, 2023 WL 6049884, at *4 (E.D. Cal. Sept. 15, 2023) (finding new evidence proffered by a plaintiff dated November 2022 immaterial where it did not relate to the relevant time period, "which extend[ed] from December 31, 2015, Plaintiff's alleged disability onset date, to June 16, 2021, the date of the ALJ's decision"); <u>Nash v. Comm'r of Soc. Sec.</u>, No. 2:20-cv-104-KJN, 2021 WL 1338820, at *4 (E.D. Cal. Apr. 9, 2021) (finding new evidence immaterial where "the records submitted by plaintiff were generated between January and August of 2020—a time period well after the ALJ issued the decision"); <u>Abdullah v. Comm'r of Soc. Sec.</u>, No. 2:17-CV-2522-DMC, 2019 WL 3731528, at *4 (E.D. Cal. Aug. 8, 2019) (finding new evidence immaterial because it post-dated the ALJ's hearing and decision); <u>Holden v. Astrue</u>, No. 1:11–cv–00716–SMS, 2012 WL 5948956, at *13 (E.D. Cal. Nov. 28, 2012) (finding medical records attached to a plaintiff's opening brief addressing the current state of his health did not relate to the period considered in the hearing decision, and therefore found remand to consider the documents was inappropriate).

At most, the underlying substantive records from the appointment lists attached by Plaintiff may indicate potential deterioration of Plaintiff's impairments *after* the ALJ's November 29, 2021 decision. This may be relevant to a new application for benefits, but it does not bear directly on the period under review in this case and therefore is not material. Should Plaintiff believe he can establish changed circumstances, such as new and material changes to his RFC, the appropriate course of action is the filing of a new application, as advised by the Appeals Council when denying Plaintiff's request for review. (<u>See</u> AR 1-4 (the Appeals Council advising Plaintiff ("If you want us to consider whether you were disabled after November 29, 2021, you need to apply again")).); <u>see also</u> <u>Holden</u>, 2012 WL 5948956, at *13; <u>Garcia</u>, 2023 WL 6049884, at *5; <u>Bruton v. Massanari</u>, 268 F.3d 824, 827 (9th Cir. 2001) (noting that new evidence involving a different time period was not material to the instant claim, but could be considered on a successive application for a new time period).

In an abundance of caution, the Court turns to the specific documents rejected by the Appeals Council. The Ninth Circuit has "routinely considered evidence submitted for the first

1   time to the Appeals Council to determine whether, in light of the record as a whole, the ALJ's

2   decision was supported by substantial evidence." Brewes v. Comm'r of Soc. Sec. Admin., 682

3   F.3d 1157, 1163 (9th Cir. 2012) ("we hold that when the Appeals Council considers new

4   evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the

5   administrative record, which the district court must consider when reviewing the Commissioner's

6   final decision for substantial evidence.")  Along these lines, the Court agrees with Defendant that

7   Plaintiff has not shown that any of the evidence he submitted to the Appeals Council was

8   necessary for adjudication of his claim.  (Opp'n 16.)  The Appeals Council properly determined

9   that most of the evidence submitted was dated after the ALJ's decision. (AR 2.)  The remaining

10  evidence, consisting of a February 2020 letter from Kaweah Delta stating that the clinic was

11  unable to schedule Plaintiff for therapy services at that time, and a September 2021 prescription

12  for an orthotic shoe insert, does not show any reasonably likelihood of changing the outcome of

13  the ALJ's decision, as the Appeals Council determined.[8] (AR 24-26.)

14       Because the records attached to his briefing are generally insignificant to the ALJ's

15  findings or are otherwise consistent with the longitudinal record that was originally before the

16  ALJ, the Court finds the ALJ's evaluation of the medical and non-medical evidence, and her

17  decision to discount Plaintiff's subjective testimony and make an RFC determination—findings

18  which Plaintiff does not challenge—would not be altered by inclusion of the documentation

19  attached to Plaintiff's briefing.  Powers v. Comm'r of Soc. Sec., No. 1:22-CV-01131-CDB, 2023

20  WL 7130716, at *12 (E.D. Cal. Oct. 30, 2023).  Further, the Court finds Plaintiff's argument that

21  the additional "evidence…shows that [Plaintiff is] in the worse condition right now than [he]

22  was," amounts to an attempt to reweigh the evidence, which this Court cannot do.  Id.  Given

23  Plaintiff's submission of documents which post-date both the ALJ's decision and the Appeals

24  Council's decision, it appears Plaintiff requests that this Court to review all the evidence and

25  grant Plaintiff's applications for disability insurance benefits and supplemental security income,

26  which this Court cannot do.  Plaintiff offers no explanation for his failure to have submitted the

27

28  [8] The Court additionally notes the Hangar prescription for the shoe insert that Plaintiff provided to the Appeals Council as "new evidence" was already part of the administrative record.  (Compare AR 30 with AR 535.)

1  documents to the ALJ and fails to demonstrate a reasonable possibility that any of the documents
2  would have changed the outcome of the ALJ's decision.  For the foregoing reasons, the Court
3  determines no such reasonable possibility exists.  Accordingly, the Court finds a remand to
4  consider new evidence is not warranted.

5  **B.     Duty to Further Develop the Record**

6  The Court addresses one argument in Plaintiff's reply brief that the Court liberally
7  construes as a challenge to the ALJ's duty to develop the record.  In response to Defendant's
8  summary of the hearing before the ALJ wherein Defendant noted that the ALJ identified the
9  providers from which she had received treatment records, then requested and received Plaintiff's
10  permission to obtain updated records from those providers, Plaintiff argues, "but doesn't the visit
11  to the emergency room on March 2020 be provided in my medical records I had granted [*sic*]?"
12  (Id. at 2.)  The Court construes this argument to challenge the ALJ's failure to obtain and include
13  the March 13, 2020 emergency room record discussed at the hearing, and therefore the ALJ
14  failed to fulfill her duty to fully and fairly develop the record.

15  1.   Legal Standard

16  When applying for disability benefits, *the claimant* has the duty to prove that he is
17  disabled.  42 U.S.C. § 423(c)(5)(A) (emphasis added); 416.912(a)(1) ("In general, you have to
18  prove to us that you are blind or disabled. You must inform us about or submit all evidence
19  known to you that relates to whether or not you are blind or disabled.").  However, the ALJ has
20  an independent " 'duty to fully and fairly develop the record and to assure that the claimant's
21  interests are considered.' "  Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting
22  Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  "This duty extends to the represented as
23  well as to the unrepresented claimant."  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir.
24  2001).  Indeed, the ALJ must be especially diligent in exploring for all the relevant facts when
25  the claimant is unrepresented. Id.

26  The ALJ has a duty to further develop the record where the evidence is ambiguous or the
27  ALJ finds that the record is inadequate to allow for proper evaluation of the evidence.  Id.;
28  Mayes, 276 F.3d at 459-60.  A specific finding of ambiguity or inadequacy in the record is not

1    required to trigger the necessity to further develop the record where the record itself establishes

2    the ambiguity or inadequacy.  McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011).

3          1.    Analysis

4          The Court finds the ALJ fulfilled her duty to assist in development of the record when

5    asking Plaintiff to confirm her knowledge of his medical providers.  (AR 52-53.)  At the hearing,

6    Plaintiff confirmed each listed provider, granted the ALJ permission to seek all records from his

7    providers, and, importantly, confirmed "there [were no] other doctors that [the ALJ] need[ed] to

8    get records from."[9] (AR 53.)  Plaintiff informed the ALJ that he would send "everything [he]

9    had" to the ALJ at the address provided by the ALJ.  (AR 53-55.)  Other than attempting to send

10   CDs of diagnostic imaging, the Court notes there is no indication in the administrative record

11   that Plaintiff forwarded any records in the six months between the date of the hearing on May 29,

12   2021 and the date the ALJ issued her decision on November 29, 2021.  The only note Plaintiff

13   identified at the hearing that was missing from the record was a March 13, 2020 emergency

14   room record from an unknown provider.  (AR 53.)  As noted, Plaintiff informed the ALJ that he

15   would send the record to the ALJ for consideration.  (AR 53.)  The Court liberally construes

16   Plaintiff's argument to challenge the ALJ's failure to obtain the record for him; however,

17   Plaintiff proffers no argument that the ALJ could not make an informed determination on his

18   claim without the emergency room record.

19         "An ALJ's duty to develop the record further is triggered only when there is ambiguous

20   evidence or when the record is inadequate to allow for proper evaluation of the evidence."

21   Mayes, 276 F.3d at 459-60.  The Court finds the record before the ALJ was neither ambiguous

22   nor inadequate to allow for proper evaluation of Plaintiff's claim without the emergency room

23   record.  As a threshold matter, Plaintiff does not provide the Court with any March 13, 2020

24   emergency room record providing objective medical evidence; rather, Plaintiff only provides

25   _____

26   [9] The Court notes Plaintiff did not identify the following providers who are listed in records within the relevant time
     period that are attached to his briefing when the ALJ requested the identity of his providers: (1) Calle Abraham
     Gonzalez (Mot. 6); (2) the worker's compensation medical providers (Mot. 14-16); or (3) Synchrony of Visalia
27   (Mot. 22-24).  The two latter providers pre-dated Plaintiff's alleged disability onset date.  As to Synchrony of
     Visalia, Plaintiff only provided a three-page appointment list for this unknown provider in his motion.  No
     information is provided as to who this provider is, what the provider practices, or whether Plaintiff's nine visits prior
28   to the ALJ's decision were relevant to his claims. (Mot. 22-24.)

incomplete discharge instructions which list three diagnoses: victim of assault, knee pain, and pack pain.  (Mot. 21.)  The Court notes there appears to be a handwritten drawing on the one-page discharge instructions which purports to indicate a fracture on an unspecified bone; however, there is no indication who drew the diagram or when it was drawn.  (Id.)  Other than questioning whether it had to be included in the administrative record (Reply 2), Plaintiff makes no argument how the March 13, 2020 emergency room record would trigger the ALJ's duty to further develop the record.

Even without the argument, the Court agrees with Defendant that the record as a whole does not show the March 2020 emergency room record was necessary for adjudication of the claim.  At the hearing, Plaintiff described a March 13, 2020 incident wherein he was "beat up by four border patrol officers."  (AR 62.)  Plaintiff stated he went to the emergency room the following day.  (Id.)  Plaintiff testified that "they fractured my leg."  (Id.)  The Court notes that the ALJ evaluated a Sequoia Health and Wellness Centers Family Medicine record dated March 30, 2020, wherein Plaintiff's chief complaint was that he still had pain, including muscle pain.[10] (AR 39, 445-56.)  The ALJ noted that during the physical examination, he was moving spontaneously, but slowly ambulating with cane.  The ALJ also noted he was assessed with knee pain. The Court notes that the same note indicated a possible hip fracture, and that the provider ordered a hip x-ray.  (AR 445.)  The ALJ detailed a right hip x-ray taken in August 2020, which "revealed possible acute on chronic or chronic hip fracture based off osteophyte/cortical disruption to lateral side of head of femur."  (AR 39, 563-64.)  The ALJ also noted the existence of the fracture in multiple records following the x-ray.  (AR 39, 546-47, 540-51).  Critically, the ALJ clearly calculated the fracture in her determination given her finding that one of Plaintiff's severe impairments is "deformity of the right femur with incomplete atypical fracture…" (AR 33.)  However, the ALJ determined the impairment did not meet or medically equal the severity of one of the listed impairments.  (AR 35.)  The ALJ determined Plaintiff has the RFC to

---

[10] The Court notes the ALJ wrote this office visit occurred in "April 2020."  (AR 43.)  However, this appears to be a clerical error.  While the record was signed by the provider on April 2, 2020, the office visit occurred on March 30, 2020.  (AR 445.)

perform light work except the claimant could occasionally climb ladders, ropes, and scaffolds; could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. (AR 41.) As noted, Plaintiff does not challenge these findings. Given evidence supporting the "fracture" alleged by Plaintiff following the March 13, 2020 incident was already included in the record and reviewed by the ALJ, the Court does not find she failed in her duty to fully develop the record. Accordingly, the Court cannot conclude a duty to further develop the record was triggered, or that the ALJ failed to perform such a duty.

## VI.

## CONCLUSION AND ORDER

In conclusion, the Court denies Plaintiff's Social Security appeal and finds no harmful error warranting remand of this action.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Benny DeCarlo Gallegos. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **March 27, 2024**

UNITED STATES MAGISTRATE JUDGE